**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**District Judge R. Brooke Jackson**

Civil Action No. 20-cv-00711-RBJ

BYRON KYLE GAY,

      Applicant,

v.

SCOTT DAUFFENBACH, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1), filed *pro se*, by Byron Kyle Gay, on March 12, 2020. Having considered the Respondents' Answer (Doc. No. 25), Applicant's Reply (Doc. No. 31), and the state court record, the Court denies the Application.

**I. Factual and Procedural Background**

In July 2010, Mr. Gay was convicted by a jury of second degree burglary and menacing in Denver District Court case number 09CR269. (Doc. No. 13-3). The Colorado Court of Appeals summarized the evidence at Applicant's trial as follows:

> B.B. and his wife, P.B., received a call from a neighbor that an intruder was in her house. They rushed over to the house, looked in through the large bay window, and saw the intruder inside the well-lit interior of the house. Another neighbor, D.W. was able to see the intruder inside the house, while looking through the window of his home across the street.

1

B.B. walked to the side of the house, saw the intruder leaving out the back, lost sight of him, but then found him crossing the next street. B.B. approached and confronted him in a well-lit area. P.B. was present when her husband confronted the intruder, and D.W., who had come outside to the corner stop sign in front of his house, also saw the confrontation. The intruder told B.B. that he did not do anything and walked away. B.B. followed him until the intruder turned and said, "I'll shoot you. Back off. I'll shoot you." B.B. complied and stopped following the intruder.

Police, who had responded to a 911 call, apprehended defendant in the backyard of a residence a few blocks away, and separately brought B.B., P.B., and D.W. for one-on-one show-up identifications. Each of them identified defendant as the intruder.

(Doc. No. 13-3, at pp. 2-3).

Mr. Gay was adjudicated a habitual offender and sentenced to an aggregate prison term of 48 years. (Doc. No. 13-3). The Colorado Court of Appeals affirmed Applicant's convictions in *People v. Byron Gay* (*Gay I*), No.10CA1871 (Colo. App. Aug. 16, 2012) (unpublished opinion). (*Id.*). Mr. Gay's petition for certiorari review was denied by the Colorado Supreme Court on January 28, 2013. (Doc. No. 13-4).

On January 21, 2014, Mr. Gay filed a § 2254 application in this Court challenging his convictions and sentence in Denver District Court case number 09CR269. *See* Case No. 14-cv-00165-LTB. The application was dismissed without prejudice as a mixed petition so that Mr. Gay could exhaust state court remedies for the unexhausted ineffective assistance of counsel claims.[1]  (Case No. 14-cv-00165-LTB, Doc. No. 12).

---

1 Because Mr. Gay's first § 2254 application was dismissed without prejudice, the present action is not "second or successive" within the meaning of § 2244(b). *Slack v. McDaniel*, 529 U.S. 473, 487 (2000).

On March 3, 2014, Mr. Gay filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c) in the state district court, which was denied. (Doc. No. 13-1 at 13). The Colorado Court of Appeals affirmed the district court's order, with the exception of one ineffective assistance of counsel claim, which was reversed and remanded for an evidentiary hearing. *See People v. Byron Kyle Gay* (*Gay II*), No. 14CA1693 (Colo. App. March 3, 2016) (unpublished opinion) (Doc. No. 13-7). On remand, the state district court denied the ineffective assistance claim. (Doc. No. 13-10). The Colorado Court of Appeals affirmed the denial of post-conviction relief in *People v. Byron Gay* (*Gay III*), No. 17CA0765 (Colo. App. Sept. 5, 2019) (unpublished opinion). (*Id.*). Mr. Gay's petition for certiorari review was denied by the Colorado Supreme Court on January 21, 2020. (Doc. No. 13-11).

Mr. Gay initiated this § 2254 proceeding on March 12, 2020. He asserts the following claims for relief:

(1) Mr. Gay's due process rights were violated by the admission of evidence obtained as the result of suggestive identification procedures. (Doc. No. 1, at p. 5).

(2) Mr. Gay's constitutional rights were violated by the admission of his involuntary statements to the police. (*Id.*).

(3) Mr. Gay's due process rights were violated by the admission of expert testimony from a witness not endorsed as an expert. (*Id.*).

(4) Mr. Gay's due process rights were violated by the admission of Colo. R. Evid. 404(b) evidence. (*Id.* at p. 6).

(5) Mr. Gay's due process rights were violated when the prosecutor made improper remarks during closing argument. (*Id.*).

(6) (a) The use of a leg restraint on Mr. Gay during trial violated his due process rights; and (b) trial counsel was ineffective in failing to object to Mr. Gay wearing a leg restraint in front of the jury. (*Id.*).

(7) Trial counsel was ineffective in failing to present an expert on identification. (*Id.* at p. 7).

(8) Mr. Gay's confrontation rights were violated by the late endorsement of the prosecution's expert on hair analysis. (*Id.*).

(9) Trial counsel was ineffective due to a conflict of interest. (*Id.* at pp. 7-8).

(10) Mr. Gay's constitutional rights were violated during the habitual criminal trial by the admission of fingerprint testimony from an unqualified witness. (*Id.* at p. 8).

(11) Mr. Gay's constitutional rights were violated by the admission of perjured testimony. (*Id.*).

In the Pre-Answer Response, Respondents conceded that this action is timely under 28 U.S.C. § 2244(d)(1) and that Mr. Gay exhausted available state court remedies for claims 1, 2, 5, 6, 7, and 9. (Doc. No. 13, at pp. 6-7, 10). Respondents argued, however, that the remaining claims were procedurally defaulted. (*Id.* at pp. 11-17). In an August 7, 2020 Order to Dismiss in Part (Doc. No. 22), the Court dismissed claims 8, 10 and 11 as procedurally barred and directed Respondents to Answer the remaining claims.

The Court addresses the merits of Applicant's remaining claims below.

## II. Applicable Legal Standards

### A. 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003). The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court

at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34

(2011). Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id.*

at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id.* at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

5

> A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *Smith v. Duckworth,* 824 F.3d 1233, 1241 (10th Cir. 2016). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. The court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might

7

disagree about the finding in question.'" *Smith*, 824 F.3d at 1241 (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Nevertheless, "if the petitioner can show that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'" *Smith,* 824 F.3d at 1241 (alterations in original) (internal quotation marks and citation omitted).

Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If § 2254(d) is overcome or does not apply, the claim must be evaluated de novo under pre-AEDPA habeas standards. *See, e.g., Cullen*, 563 U.S. at 202-03; *Cargle v. Mullins*, 317 F.3d 1196, 1206 (10th Cir. 2003).

## B. *Pro Se* Litigant

Mr. Gay is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations

omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se*

litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991). A court may not assume that an applicant can prove facts that have not been

alleged, or that a respondent has violated laws in ways that an applicant has not

alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

459 U.S. 519, 526 (1983). *Pro se* status does not entitle an applicant to an application

of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III. Analysis of Claims

### A. Claim 1

In claim one, Mr. Gay contends that his federal due process rights were violated

by the admission of evidence obtained as the result of suggestive pre-trial identification

procedures. (Doc. No. 1, at p. 5).

#### 1. Applicable Supreme Court law

"[T]he admission of testimony concerning a suggestive and unnecessary

identification procedure does not violate due process so long as the identification

possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106

(1977). A challenge to the constitutionality of a pre-trial identification procedure requires

a two-step analysis. First, the court determines whether the identification procedure was

impermissibly suggestive. *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *Manson*, 432 at

113-14. Second, if the identification was impermissibly suggestive, the court must further determine whether, under the totality of the circumstances, the suggestive procedure created a "substantial likelihood of misidentification" or was reliable. *Biggers*, 409 U.S. at 201. "[R]eliability is the linchpin in determining the admissibility of identification testimony. *Manson,* 432 U.S. at 114. The Supreme Court has set forth five factors to be considered when evaluating the reliability of a police identification procedure:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200; *Manson*, 432 U.S. at 114, 117.

If there is a "very substantial likelihood of irreparable misidentification . . . the judge must disallow presentation of the evidence at trial." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). "But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will determine its worth." *Id.*

### 2. State court proceeding

The Colorado Court of Appeals rejected Mr. Gay's claim on the following grounds:

> Defendant contends that the trial court erred by refusing to suppress out-of-court identifications by the three witnesses, asserting that the identification procedure used by the police was impermissibly suggestive and unreliable. We perceive no error.
> …

10

When challenging a pre-trial identification, the defendant bears the initial burden of proving that the identification procedure was unnecessarily suggestive. [*Bernal v. People,* 44 P.3d 184, 191 (Colo. 2002)]. If the defendant meets this burden, then the prosecution must prove, under the totality of the circumstances, that the identification was reliable despite its suggestive circumstances. *Id.* The court must consider (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *People v. Mascarenas,* 666 P.2d 101, 109 (Colo. 1983).

Based upon the suppression hearing evidence, the trial court applied the above enumerated test and found that the time between the crime and the show-up procedures was between ten and twenty minutes and the police conducted a separate show-up with each witness. Defendant was in handcuffs and illuminated by a spotlight. The police advised each witness that it was acceptable if he or she did not identify the possible suspect because it was important not to incriminate an innocent person. The court also found that while defendant's outer clothing did not match the description of the intruder's clothing, the suspect had an opportunity, when out of the witnesses' view, to remove clothing.

A. Identification by B.B.

The court found that B.B. observed the intruder in the home for one to two minutes before the intruder exited through the back door, and B.B. saw him two more times when he confronted him outside the house. B.B. tried to delay the intruder long enough for the police to arrive, he focused on the intruder's face during the encounters, and he described the intruder as a large African-American male. He was "one hundred percent" confident in his identification of defendant as the intruder.

These findings are supported by the record, and considering the totality of the circumstances, we conclude that B.B.'s identification was sufficiently reliable so as not to violate defendant's due process rights. . . .

B. Identification by P.B.

The court found that P.B. saw the intruder through the bay window for forty-five seconds to one minute as well as on the streets when her husband was pursuing him. She saw his profile in the house, observed

11

him outside from head to toe, and also paid particular attention to the way he walked. Although she was initially uncertain whether defendant was the intruder, she became "one hundred percent" confident in her identification after she observed him walk during the show-up procedure.

These finding are also supported by the record, and considering the totality of the circumstances, we conclude that the court's findings support its ruling that the identification procedure "did not violate due process standards."

C. Identification by D.W.

D.W. saw the intruder in the home for about ten seconds at a distance of at least eighty feet, and also saw him closer, when he was drawn outside of his house and watched the confrontation as it transpired. He was candid that his observations were more of the build and the whole person, rather than the particular details of the intruder's face. He indicated that defendant's coat was different at the show-up, but he was "pretty positive" in his identification based on defendant's build, height, and clothing.

These findings are supported by the evidence in the record, and we conclude that, although D.W. had less of an opportunity to view defendant than did the other two witnesses, based on the totality of the circumstances, the identification procedure was sufficiently reliable so as not to violate due process.

We are not persuaded by defendant's contentions that (1) each of the identifications was unreliable because of some discrepancies in the three witnesses' testimony as to the amount of time the intruder was in the house and the distinctiveness of the intruder's gait, and (2) D.W.'s prior description of the intruder was unreliable because it was based, in part, on the intruder's clothing, which was different from defendant's clothing at the show-up. These asserted discrepancies go to the weight rather than the admissibility of the identifications. [State case citation omitted].

Because substantial evidence supported the trial court's findings and conclusions as to each identification procedure, we conclude that there was no error in the district court's denial of defendant's motion to suppress the out-of-court identifications.

(Doc. No. 13-3, at pp. 3-8).[2]

### 3. AEDPA analysis

The Colorado Court of Appeals applied a state law multi-factor analysis identical to the analysis set forth in *Neil v. Biggers* in concluding that the out-of-court identifications, although impermissibly suggestive, were nonetheless reliable, and were properly admitted at trial. Accordingly, the legal principles applied by the state appellate court were not contrary to Supreme Court law.

Mr. Gay argues that the Colorado Court of Appeals' decision was based on an unreasonable determination of the facts because witness D.W.'s testimony contradicts the state appellate court's finding that B.B. and P.B. stood on the victim's porch and looked through the bay window of the victim's home to see the intruder. (Doc. No. 31, at p. 2). D.W.'s testimony was that P.B. was standing beside him across the street from the victim's home at the time they saw the intruder and that B.B. was not present because he had gone around the side of the victim's home. (*Id.* at pp. 2-3). Mr. Gay asserts that the testimony of B.B. and P.B. was perjured because they never saw the intruder in the victim's home before D.W. saw the intruder and called 911. (*Id.* at pp. 4-5).

Both B.B. and P.B. testified at the suppression hearing that they observed the intruder in the neighbor's home through the front bay window while standing on the

---

2  *See also* State Court Record ("R."), 3/1/10 Hrg. Tr., trial court factual findings, at pp. 518-521.

victim's porch.[3] Although D.W.'s recollection of events differed from the testimony of B.B. and P.B., the factual discrepancies were a matter to be resolved by the trial court in ruling on the motion to suppress the out-of-court identifications.[4]  The Colorado Court of Appeals' findings that B.B. and P.B. observed the intruder through the front bay window before the intruder exited the victim's house were reasonable based on the witnesses' testimony at the suppression hearing. Therefore, Applicant has failed to demonstrate an entitlement to relief under § 2254(d)(2).

The Colorado Court of Appeals' factual findings under the *Biggers* analysis are supported by the state court record[5] and Mr. Gay does not point to any clear and convincing evidence to the contrary. This Court defers to the factual findings underlying the state appellate court's determination of reliability. *See Sumner v. Mata*, 455 U.S. 591, 597-98 (1982); *Stamps v. Miller*, No. 18-1393, 763 F. App'x 686, 696-97 (10th Cir. Feb. 12, 2019) (unpublished) ("Because reliability is a factual issue, we presume the state court's determination to be correct, and Mr. Stamps can only overcome this presumption by a showing of "clear and convincing evidence." 28 U.S.C. § 2254(e)(1)."). However, the determination of whether Applicant's due process rights were violated by an unconstitutional pre-trial identification procedure is a mixed question of law and fact.

---

3 *See* R., 2/22/10 Hrg. Tr., Ben Blanchard (B.B.) testimony, at pp. 291-98; Patti Blanchard (P.B.) testimony, at pp. 328-334; David Winkler (D.W.) testimony, at pp. 360-373.

4  Similarly, D.W.'s trial testimony that he did not see P.B. or B.B. standing on the front porch of the victim's home does not compel a finding that B.B. and P.B. perjured themselves at the suppression hearing or at trial. Any conflicts in the witnesses' trial testimony were a matter for the jury.

5  R., 2/22/10 Hrg. Tr., B.B. testimony, at pp. 294-312, 320; P.B. testimony, at pp. 325-347, 354; D.W. testimony, at pp. 359-371; Officer Scott Day testimony, at pp. 383-393.

*United States v. Worku*, 800 F.3d 1195, 1205 (10th Cir. 2015); *Archuleta v. Kerby*, 864 F.2d 709, 710-11 (10th Cir. 1989).

Under *Biggers,* reliability is assessed in light of the "totality of the circumstances," 409 U.S. at 199. No single factor standing alone is dispositive. As such, discrepancies between the witnesses' testimony as to the amount of time the intruder was in the house, the distinctiveness of the intruder's gait, and, the fact that Mr. Gay was wearing different clothing at the show-up than what the intruder was described as wearing, do not necessitate a conclusion that the Colorado Court of Appeals' determination of reliability was unreasonable. Because the *Biggers* fact-based inquiry is a general standard, the state courts are afforded "more leeway" in "reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101. *See also Brisco v. Ercole*, 565 F.3d 80, 89-90 (2d Cir. 2009) (stating that the unreasonable application standard is especially deferential where state courts apply open-ended, multifactor tests like that in *Biggers*); *Williams v. Bauman*, 759 F.3d 630, 639 (7th Cir. 2014) (same). Given the deferential standard, the Court concludes that, at a minimum, fair-minded jurists could disagree about whether the Colorado Court of Appeals reasonably applied *Biggers* and *Manson* in determining that the police identification procedure did not result in a substantial likelihood of irreparable misidentification. Therefore, Applicant has failed to demonstrate an entitlement to relief under § 2254(d)(1).

## B. Claim 2

For his second claim, Mr. Gay contends that his constitutional rights were violated by the admission of his involuntary statements made to the police at the scene

of his arrest and while he was in an ambulance awaiting transport to the hospital. (Doc. No. 1, at p. 5).

### 1. Applicable Supreme Court law

The Fifth Amendment provides that no "person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that law enforcement officers must employ certain procedural safeguards to ensure that a criminal suspect's right against compulsory self-incrimination is protected during a custodial interrogation. *Id.* at 444-45, 478-79. *See also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). ("The *Miranda* Court formulated a warning that must be given to suspects before they can be subjected to custodial interrogation.").

Determining whether a police encounter was "custodial" requires asking whether, considering all the circumstances, "would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

The term "interrogation" for purposes of *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

A suspect's waiver of the rights described in the *Miranda* warning must be knowing, intelligent and "voluntary in the sense that it was the product of a free and

deliberate choice rather than intimidation, coercion, or deception" by law enforcement. *Berghuis*, 560 U.S. at 382 (internal quotation marks and citation omitted). "[C]oercive police activity is a necessary predicate to the finding that [inculpatory statements are] not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Factors relevant to the voluntariness analysis include the age, education and intelligence level of the defendant; whether the defendant was advised of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Threats or violence, promises of leniency, and the exertion of any improper influence are factors to be considered in determining whether a defendant's inculpatory statements were coerced under the totality-of-the-circumstances analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 286-87 (1991).

### 2. Statements made at time of arrest

#### a. state court proceeding

In *Gay I,* the Colorado Court of Appeals addressed and rejected Mr. Gay's claim that the trial court violated his due process rights by admitting involuntary statements he made to the police at the scene of his arrest:

> We are not persuaded by defendant's contention that his statements to the arresting officers should have been suppressed because they were made in response to a custodial interrogation in the absence of a *Miranda v. Arizona*, 384 U.S. 436 (1966) advisement.

Statements made during a custodial interrogation are generally inadmissible unless the defendant was advised of his or her *Miranda* rights and waived those rights. *People v. Wood*, 135 P.3d 744, 749 (Colo. 2006). For the purposes of determining whether a custodial interrogation occurred, the term "[i]nterrogation includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.* at 750 (quoting *Rhode Island v. Innis*, 446 U.S. 296, 301 (1980)). Generally, the use of force necessary to effectuate an arrest does not constitute an interrogation. *See id.* (excepting from the term "interrogation" those words or actions normally attendant to arrest).

The parties do not dispute that defendant was in custody and that the officers used physical force to arrest him. The only issue is whether the physical force employed during the arrest constituted an interrogation.

Here, the trial court found that two officers responding to the burglary call observed defendant, who matched the suspect's description, run into a backyard. The officers approached defendant, identified themselves, and because they reasonably believed he may have been armed, ordered him to the ground. Defendant did not comply and the officers tackled defendant. Defendant attempted to get up and the officers tackled him again. Defendant landed on his head, causing a cut and some bleeding. Because defendant continued to struggle, the officers used physical force to restrain him, punching him in the arm and using a rear twist lock to place him under arrest. The officers did not ask defendant any questions, but he said, "I didn't do any burglaries." The officers did not respond to this statement.

These findings are supported by the evidence in the record, and we conclude that the officers' use of force was reasonably necessary to effect the arrest, and was not likely to elicit an incriminating response. Because there was no interrogation, we conclude that the trial court did not err in refusing to suppress the statement defendant made during his arrest.

(Doc. No. 13-3, at pp. 8-10).[6]

---

[6] *See also* R., 3/1/10 Hrg. Tr., trial court findings, at pp. 526-531.

### b. AEDPA analysis

The Colorado Court of Appeals' factual findings concerning the circumstances surrounding Applicant's statement to the arresting officers are presumed correct and are supported by the state court record.[7]  Applicant does not point to any clear and convincing evidence to the contrary.

The Court finds that the Colorado Court of Appeals reasonably applied *Innis* in concluding that the police officers' use of force against Mr. Gay in securing his arrest was not likely to elicit an incriminating response, and therefore, did not constitute an interrogation. Further, the state appellate court's decision was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. In his Reply, Mr. Gay urges the Court to consider additional factual circumstances surrounding his interaction with the police that was not presented as evidence to the state courts. *See* Doc. No. 31, at p. 7. However, federal habeas review is limited to the record before the state courts. *See Cullen,* 563 U.S. at 181. Mr. Gay has failed to demonstrate an entitlement to relief under 28 U.S.C. § 2254(d)(1) or (d)(2).

### 3. Statements made in ambulance

#### a. state court proceeding

The Colorado Court of Appeals also rejected Applicant's claim that his due process rights were violated when the trial court admitted involuntary statements he made to the police while he was in the ambulance:

---

7  R., 2/22/10 Hrg. Tr., Officer Kyle Smith testimony, at pp. 403-05, 410-12, 416; 3/1/10 Hrg. Tr., Officer Anthony Tak testimony, at pp. 442-445, 446-450.

B. Statements Made in Ambulance

Defendant also asserts on appeal that, because of the manner in which he was arrested and the fact that he received a head injury during his arrest, he did not voluntarily waive his *Miranda* rights, nor were his subsequent statements in the ambulance knowingly, intelligently, or voluntarily made. Again, we disagree.

In order to be valid, a *Miranda* waiver must be voluntary, knowing, and intelligent. *People v. Platt*, 81 P.3d 1060, 1065 (Colo. 2004) (citing *Miranda*, 384 U.S. at 444). A *Miranda* waiver is considered voluntary unless "coercive governmental conduct—whether physical or psychological—played a significant role in inducing the defendant to make the confession or statement." *Id.* (quoting *People v. May*, 859 P.2d 879, 883 (Colo. 1993). A waiver is knowing and intelligent when made with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *People v. Hopkins*, 774 P.2d 849, 851 (Colo. 1989).

The Due Process Clause of the Fourteenth Amendment prohibits the admission of involuntary statements into evidence. *People v. Humphrey*, 132 P.3d 252, 360 (Colo. 2006) (citing *Dickerson v. United States*, 530 U.S. 428, 433 (2000)). A statement is involuntary if coercive governmental conduct played a significant role in inducing it. *Id.*; *see Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986). Ultimately, the test of voluntariness is whether the individual's will has been overborne. *Humphrey,* 132 P.3d at 361.

In determining whether a statement is involuntary, courts consider the totality of the circumstances under which the statement is made, which may include

(1) whether the defendant was in custody or was free to leave and was aware of his situation;

(2) whether *Miranda* warnings were given prior to any interrogation;

(3) whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation;

(4) whether the challenged statement was made during the course of an interrogation or instead was volunteered;

20

(5) whether any overt or implied threat or promise was directed to the defendant.

(6) the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation;

(7) the defendant's mental and physical condition immediately prior to and during the interrogation; and

(8) the defendant's education background, employment status, and prior experience with law enforcement and the criminal justice system.

*People v. Gennings,* 808 P.2d 839, 844 (Colo. 1991) (paragraph numbering added).

Here, the trial court expressly found that, although defendant "may have incurred an abrasion to his head, there [was] no evidence whatsoever that he incurred a head injury or suffered from any other injury that would have rendered his statement involuntary." The trial court also found that (1) defendant was in custody; (2) he was properly advised of his *Miranda* rights and he knowingly, intelligently, and voluntarily waived those rights; (3) there were no threats or promises made to defendant; (4) the detective used a conversational tone throughout the interrogation; (5) the interrogation was very short, only about ten minutes, and took place inside an ambulance; (6) defendant appeared to be alert, there was no indication he was under the influence of drugs or alcohol, and his injuries did not affect him; and (7) defendant appeared to be of average intelligence and had prior experience with law enforcement and the criminal justice system.

These findings are supported by the record, and considering the totality of the circumstances, we conclude that defendant's waiver and subsequent statements were knowingly, intelligently, and voluntarily made. We, therefore, conclude that the trial court did not err in refusing to suppress defendant's statements made to the police detective after his arrest. [Colorado case citations omitted].

(Doc. No. 13-3, at pp. 8-14).[8]

### b. AEDPA analysis

The Colorado Court of Appeals' factual findings in support of its determination are supported by the state court record,[9] and Mr. Gay does not point to any clear and convincing evidence to the contrary.

The Colorado Court of Appeals applied controlling Supreme Court standards in determining Applicant's due process claim. The Court finds that state appellate court's conclusions that the injuries Applicant suffered during the course of his arrest did not render his waiver of *Miranda* rights involuntary, and that Applicant's statements to the detective in the ambulance were not the product of police coercion, but instead were made knowingly, intelligently, or voluntarily, were a reasonable application of Supreme Court law and were based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. Mr. Gay has not demonstrated an entitlement to relief under 28 U.S.C. § 2254(d)(1) or (d)(2).

## C. Claim 5

In claim five, Mr. Gay asserts that his due process rights were violated when the prosecutor made improper remarks during closing argument. (Doc. No. 1, at p. 6).

### 1. Applicable Supreme Court law

The Tenth Circuit has outlined the following Supreme Court standards applicable

---

8  *See also* R., 3/1/10 Hrg. Tr., trial court findings, at pp. 531-32.

9  R., 3/1/10 Hrg. Tr., Detective Moses Rodriguez testimony, at pp. 456-472.

to prosecutorial misconduct claims:

> In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005). *See also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (recognizing that the due process standards articulated in *Darden* and *Donnelly* are the clearly established federal law relevant to a constitutional claim challenging a prosecutor's allegedly improper comments).

"[T]he *Darden* standard is a very general one, leaving courts 'more leeway. . .in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In addition, it is well-established that the prosecution cannot shift the burden to a criminal defendant to prove his own innocence. *See Mullaney v. Wilbur*, 421 U.S. 684, 703 (1975).

### 2. State court proceeding

In *Gay I,* the Colorado Court of Appeals resolved Mr. Gay's prosecutorial misconduct claim as follows:

> Defendant contends that the trial court erred by permitting the prosecution to make an improper closing argument. We conclude that the

prosecution's argument was not improper and, therefore, conclude that the trial court did not err.

The scope of closing argument rests in the sound discretion of the trial court, and its rulings will not be disturbed on appeal absent a showing of abuse of discretion. *People v. Gomez-Garcia,* 224 P.3d 1019, 2024 (Colo. App. 2009) (citing *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We review an allegedly improper argument in the context of the argument as a whole and in light of the evidence presented. *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010).

The prosecution, in closing argument, may comment on the evidence and the reasonable inferences that may be drawn therefrom, but may not misstate the law or mislead the jury. *Domingo-Gomez*, 125 P.3d at 1049; *People v. Lucas*, 232 P.3d 155, 165 (Colo. App. 2009).

Additionally, the prosecution cannot shift the burden to the defendant to prove his or her own innocence. *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011).

During closing argument, defendant argued that he was falsely identified and suggested several bases for finding reasonable doubt. During rebuttal closing argument, the prosecution stated:

> Reasonable doubt cannot be—under the law, it can't be, it's not allowed to be, vague, speculative or imaginary. I'm going to zero on speculative. Speculative means guessing.
>
> There's no guessing in criminal trials. If you get back there in your deliberations and you're forming a sentence that starts with the phrase "what if," you've got to stop that sentence, because it means that we haven't put it in evidence, and if we haven't put it into evidence, then you get to hold it against us, but you don't get to fill in blanks. You get to make reasonable conclusions based on the evidence, but there's no what-iffing [sic] in jury trials, because the stakes are too high.
>
> Closely connected to that idea is the idea that the [co-prosecutor] referred to, and I'm going to build on just for a little bit, the difference between what is, and by that I mean what is the evidence that's proven in this case, versus what if, which is the guessing or speculation that you're forbidden to do in a criminal trial.

The prosecution then highlighted the evidence before the jury and argued that defendant's theory would require the jury to engage in speculation. Defendant objected, stating:

> Your honor, my objection is that characterizing everything that we said as what-if's and speculation and telling the jury that's— they're not permitted to do that is not making a distinction between speculation and making reasonable inferences.

> And I think that the jury should be instructed on what a reasonable inference is. I also think that the statements that any—that if they were—if the jury were to believe what [defendant] or his counsel is proposing to them that—I think that's burden-shifting. [sic]

The trial court overruled the objection.

On appeal, defendant contends that the prosecution's argument misstated the law and encouraged the jury to disregard reasonable doubt. Upon our review of the prosecution's argument as a whole, *see Strock*, 252 P.3d at 1153, we conclude that the prosecution properly stated the reasonable doubt standard and its characterization of defendant's bases for reasonable doubt as speculative was not improper. . . .

To the extent that defendant contends the prosecutor's arguments shifted the burden, we also disagree.

To determine whether a prosecutor's comments have improperly shifted the burden, we consider a spectrum of burden-shifting actions. *See Santana*, 255 P.3d at 1131. Specifically, we consider the degree to which (1) the prosecutor specifically argued or intended to establish that the defendant bore the burden of proof; (2) the prosecution's actions constituted a fair response to the questions and comments of defense counsel; and (3) the jury was informed by counsel and the court about the defendant's presumption of innocence and the prosecutor's burden of proof. *Id.* at 1131-32.

Applying these factors, we note that the prosecution did not argue that the defendant bore any burden of proof. Rather, as described above, the prosecution, in response to comments made by the defense, argued that defendant's asserted bases for reasonable doubt were speculative. Consequently, these arguments did not impermissibly shift the burden. *Id.*at 1132 (commenting on the lack of evidence confirming the

defendant's theory is not impermissible burden-shifting); *see also People v. Gibson*, 203 P.3d 571, 577-78 (Colo. App. 2008) (prosecution's argument that the combination of circumstances was more than coincidence was not impermissible burden shifting). Because we conclude that the prosecution's closing arguments were not improper, the trial court did not err in permitting these arguments.

(Doc. No. 13-3, at pp. 20-26).

### 3. AEDPA analysis

In determining whether the Colorado Court of Appeals' decision was a reasonable application of the *Darden* standard, the Court considers relevant decisions from the Tenth Circuit to inform its analysis.

The prosecution may property comment in closing argument on the lack of evidence to support the defense theory, without improperly shifting the burden of proof. *See Sanchez v. Bryant*, No. 16-6027, 652 F. App'x 599, 606 (10th Cir. June 9, 2016) (unpublished) (denying a certificate of appealability on applicant's claim of prosecutorial misconduct based on improper burden-shifting in closing argument where prosecutor commented on a lack of evidence to substantiate applicant's defense theory, but also acknowledged the State's burden to prove guilt, which the evidence had established). *See also Morris v. Workman*, No. 09-6248, 382 F. App'x 693, 696 (10th Cir. June 11, 2010) (unpublished) (citing *United States v. Simpson*, 7 F.3d 186, 190 (10th Cir.1993) (collecting cases permitting prosecutorial comment on lack of evidence supporting defendants' theories). *Accord Hooper v. Mullin,* 314 F.3d 1162, 1172-73 (10th Cir. 2002) (concluding that prosecutor's remark during closing that "it would have been a 'wild coincidence' if the defendant had not knowingly possessed the drugs found in his rental

26

car" constituted fair comment on the evidence). Moreover, prosecutors have

"considerable latitude" to respond to an argument of opposing counsel. *United States v.*

*Herron*, 432 F.3d 1127, 1136 (10th Cir. 2005).

In closing argument, defense counsel argued that the evidence did not establish

Mr. Gay's guilt beyond a reasonable doubt because, *inter alia*, there were discrepancies

in the witnesses' descriptions of the burglar and Mr. Gay's actual appearance at the

time of the identification; the witnesses identified Mr. Gay as the burglar because

Applicant was the person apprehended by the police and presented to them in

handcuffs; there was no proof that Mr. Gay had not been at the Kennedy High School

gym working out the night of the burglary (as he told the police); Mr. Gay ran from the

police because of an outstanding traffic warrant; Mr. Gay told the police he had not

committed any burglaries because it was clear that the police were looking for a suspect

in a crime; and, the fact that Mr. Gay's DNA was found on the knit hat retrieved by the

police near the location of the burglary did not establish that Applicant had committed

the burglary.[10]

The prosecution responded to defense counsel's argument by emphasizing that

the witness identification testimony, together with the physical evidence, established

"overwhelming evidence" of Applicant's guilt, and, therefore, the jury should disregard

the defense's implausible arguments to the contrary.[11]  The co-prosecutor repeatedly

---

10  R., 6/11/10 Trial Tr., Defense Closing, at pp. 1455-1473.

11  R., 6/11/10 Trial Tr., People's Rebuttal, at pp. 1474-1491.

reminded the jury during rebuttal closing that the prosecution bore the burden of proof.[12]

Given that the *Darden* standard is a very general one, and considering the relevant Tenth Circuit case law cited above, the Court finds that the Colorado Court of Appeals' determinations that the prosecutor's argument was not improper and did not constitute impermissible burden-shifting were not so lacking in justification as to be beyond all possibility of fair-minded disagreement. Further, the Colorado Court of Appeals' decision was not based on an unreasonable determination of the facts. Mr. Gay has failed to demonstrate an entitlement to relief under § 2254(d)(1).

Further, because Mr. Gay fails to demonstrate that the Colorado Court of Appeals' resolution of his prosecutorial misconduct claim was based on an unreasonable factual determination, he is not entitled to relief under § 2254(d)(2).

### D. Claim 6(a)

In claim 6(a), Mr. Gay contends that the use of a leg restraint on him during trial violated his due process rights. (Doc. No. 1, at pp. 6-7).

#### 1. Applicable Supreme Court law

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

---

12  *Id.* at pp. 1479, 1481, 1491.

## 2. State court proceeding

In *Gay II*, the Colorado Court of Appeals resolved Mr. Gay's claim on the

following grounds:

> Defendant [asserts] that counsel failed to protect his right of due
> process and his right against self-incrimination by failing to challenge the
> use of any security restraint. He alleges that he was prejudiced by this
> failure because the jury "knew he was in custody and allegedly posed an
> extreme danger." In his opening brief, however, defendant acknowledges
> that when a security restraint is not seen or heard by the jury, any error in
> restraining a defendant is harmless. *See Hoang v. People*, 2014 CO 27,
> ¶ 24 (if defendant asserts that shackling him violated his due process, he
> must demonstrate that the shackles were visible or audible to the jury.).
> Defendant claims that the security restraint "was worn beneath his pant
> leg." And he makes no claims about audible noises from the security
> restraint. Thus, he has not demonstrated that he was prejudiced by use of
> the restraint alone, but only by the fact that the jury may have been able to
> see the effect the leg restraint had on his gait. *See id.* at ¶¶ 24, 31.

(Doc. No. 13-7, at pp. 13-14).

## 3. AEDPA analysis

The Colorado Court of Appeals' decision was consistent with *Deck*, which

prohibits leg restraints that are visible to the jury. *See also Sanchez v. Warrior*, No. 15-

6043, 636 F. App'x 971, 976 (10th Cir. Jan. 8, 2016) (unpublished) (stating that of *Deck*

"holds that the Constitution forbids the use of *visible* shackles.") (Emphasis in the

original). Mr. Gay does not point to any Supreme Court case that entitles him to relief

under the circumstances presented. "Section 2254(d)(1) provides a remedy for

instances in which a state court unreasonably *applies* this Court's precedent; it does not

require state courts to *extend* that precedent or license federal courts to treat the failure

to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (Emphasis in the

original). Accordingly, Mr. Gay has failed to show that the state appellate court's ruling was contrary to, or an unreasonable application, of Supreme Court law. Further, the Colorado Court of Appeals' decision was not based on an unreasonable determination of fact. Mr. Gay has failed to demonstrate an entitlement to relief under § 2254(d)(1) or (d)(2).

### E. Ineffective Assistance of Counsel Claims

Mr. Gay raises the following ineffective assistance of trial claims: trial counsel was ineffective in failing to raise a federal due process objection to the use of a leg restraint on him during trial (claim 6(b)); trial counsel was ineffective in failing to present an expert on identification (claim 7); and, trial counsel was ineffective due to a conflict of interest (claim 9).

### 1. Applicable Supreme Court law

The Sixth Amendment generally requires that defense counsel's assistance to the criminal defendant be effective. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different). *Id.*

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In other words, there is a rebuttable presumption that "an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The federal habeas court's review of the state appellate court's disposition of an ineffective assistance claim under the AEDPA is "doubly deferential." *Cullen,* 563 U.S. at 190. The court "defer[s] to the state court's determination that counsel's performance was not deficient and, further, defer[s] to the attorney's decision in how to best represent a client." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (internal quotation marks and citations omitted).

"With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 693.

Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009).

### 2. claim 6(b)

In claim 6(b), Mr. Gay contends that trial counsel was ineffective in failing to object to the use of a leg restraint on him during trial. (Doc. No. 1, at pp. 6-7). Applicant

argued to the state court that because the leg restraint altered his gait in a way that rendered it consistent with a witness's description of the burglar's distinctive gait, counsel's failure to ask the court to prevent the jury from seeing him walk was not a reasonable trial strategy. (Doc. No. 13-10, at p. 9).

### a. state court proceeding

In *Gay* II, the Colorado Court of Appeals reversed the trial court's denial of post-conviction relief on claim 6(b) and remanded the clam for an evidentiary hearing. (Doc. No. 13-7, at pp. 10-13). In *Gay III*, the Colorado Court of Appeals applied the *Strickland* standard, *see* Doc. 13-10, at pp. 7-9, and determined that trial counsel's performance was not objectively unreasonable:

> At the evidentiary hearing, both of Gay's lawyers testified that they were familiar with the leg restraint; that when the restraint was locked, the wearer could not bend his knee; but that they were not concerned that the jury might see Gay walking. One lawyer explained that they "didn't care about the leg brace that much" because, "if it was going to do anything," the restraint "was going to alter [Gay's] gait even more" and "that would have been good." The second lawyer recalled that she did not object to Gay walking in front of the jury because "the leg brace altered the way that he walked," and she "didn't think it was consistent with how the witness described his gait."

> Based on the testimony, the district court determined that counsel's decision to forgo any objection was made with an understanding of Ms. Blanchard's anticipated testimony, the legal principles applicable to the use of security restraint devices, and the operation and effect of the device, and that counsel had "weighed all plausible options concerning the matter in light of their professional experience and knowledge." We cannot say that the court's findings are clearly erroneous and, therefore, we are not in a position to second-guess counsel's strategic choices. *See People v. Tackett*, 742 P.2d 957, 960 (Colo. App. 1987) (when defense counsel evaluates and identifies benefits of pursuing one defense over another, the court will not second-guess counsel's judgment).

Even if we were inclined to second-guess counsel's decision in this regard, we would conclude that it was objectively reasonable. The district court found that the restraint might have caused Gay to walk "with a limp," which was not consistent with Ms. Blanchard's description of the burglar and, therefore, "the brief observation of prospective jurors, if any, did not confirm, corroborate, or bolster [Ms. Blanchard's] testimony."

Our own review of the videotaped demonstration, *cf. People v. Ramadon*, 2013 CO 68, ¶ 21 (when trial court's findings are based solely on documentary evidence, appellate court is in the same position as the trial court to determine what the evidence depicts), confirms the court's finding. When the restraint is in the locked position, the wearer's right leg does not bend (we think calling the movement a "limp" overstates the effect), but the wearer's foot otherwise moves normally from heel to toe. Certainly, the videotaped demonstration did not show that the restraint would cause the wearer to "slide" or "shuffle" his feet in a "quick step" or to rotate his torso in a distinctive manner, as Ms. Blanchard described.

Accordingly, we conclude that the district court did not err in determining that counsel's performance did not fall outside the wide range of reasonable professional assistance.

(Doc. No. 13-10, pp. 9-11).[13]

The Colorado Court of Appeals also concluded that Applicant had failed to

establish that he was prejudiced by counsel's performance:

The district court concluded that even if counsel's performance was deficient, Gay failed to establish prejudice. As the court explained, because of the strength of the evidence of identity, Gay could not show that but for counsel's error in allowing the jury to observe his walk, the outcome would probably have been different.

On appeal, Gay argues that the "record does not support the court's apparent conclusion that the evidence of guilt was overwhelming." We are not persuaded.

---

13 *See also* R., 2/17/17 Hrg Tr., Jay Grant testimony, at pp. 1623-1633; Anna Geigle (Salas) testimony, at pp. 1658-1662); 6/10/10 Trial Tr., P.B. testimony, at pp. 1133-35, 1147; Rule 35(c) Hrg. Defense Ex. D.

The record indicates that the following evidence was introduced at Gay's trial:

- A black ski mask, matching witnesses' descriptions of the hat worn by the burglar, was found near the crime scene along Gay's escape route. Gay's DNA as well as hairs consistent with the neighbors' dog's hairs were on the ski mask.
- Three eyewitnesses identified Gay as the intruder the night of the burglary, and two eyewitnesses identified Gay as the intruder in court. An officer also identified the suspect he saw running through houses and yards, and hiding behind a tree, as Gay in court.
- Testimony at trial established that (1) Gay ran from eyewitnesses; (2) Gay hid from police officers; (3) Gay was seen running through houses and yards near the crime scene; (4) Gay was arrested only a few blocks from the crime scene; (5) Gay told officers he "didn't do any burglaries" without being asked; (6) Gay was wearing trousers and loafers (and no athletic clothing was found in his car) but told officers he was out for a "cool-down walk" after working out at a nearby school; (7) his car was parked across the street from the burglarized home, although he told officers it was parked at the nearby school; and (8) his pants were ripped, his pockets had leaves and stems in them, and his shoes had dirt and leaves in the bottom, all consistent with his alleged escape route through yards and over a fence.
- The court admitted evidence, pursuant to CRE 404(b), that Gay had committed a prior burglary in a similar manner.

We agree with the district court that the evidence of identity was overwhelming. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Accordingly, we conclude that Gay failed to establish prejudice from his counsel's alleged deficient performance. . . .

(*Id.* at pp. 12-14).

### b. AEDPA analysis

Under the doubly-differential standard of review applicable to Mr. Gay's ineffective assistance of counsel claim, the Court finds, under the first prong of the *Strickland* inquiry, that fair-minded jurists could disagree about whether defense counsel's decision not to object to the leg restraint was a reasonable trial strategy. In addition, the Colorado Court of Appeals' determination that the evidence of guilt against Mr. Gay—both eyewitness testimony and physical evidence—was overwhelming constituted a reasonable determination of fact based on the evidence presented at Mr. Gay's trial.[14] As such, the state appellate court's conclusion that Applicant was not prejudiced by having the jury see him walking in a leg restraint constituted a reasonable application of the *Strickland* standard. *See Turrentine v. Mullin*, 390 F.3d 1181, 1208-09 (10th Cir. 2004) (a defendant cannot show *Strickland* prejudice when overwhelming evidence of his guilt was presented); *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999) (finding any deficiency in counsel's performance to be nonprejudicial because the record was replete with evidence of the applicant's guilt); *see also Williams v. Trammell*, 782 F.3d 1184, 1205 (10th Cir. 2015) (state appellate court's finding of no prejudice was not unreasonable because the evidence of guilt was overwhelming). Mr. Gay has failed to demonstrate an entitlement to relief under § 2254(d)(1) or (d)(2).

---

14 *See* R., 6/9/10, 6/10/10 and 6/11/10 Trial Transcripts.

**2. claim 7**

Mr. Gay asserts in claim 7 that defense counsel was ineffective in failing to present an expert on identification. (Doc. No. 1, at p. 7).

In *Gay II,* the Colorado Court of Appeals determined that although Mr. Gay asserted that an eyewitness identification expert could have testified about seven variables in memory construction, Applicant left these variables "unthethered to the facts in his case." (Doc. No. 13-7, at pp. 8-9). The state appellate court concluded that "[w]ithout a link between these generic assertions and the eyewitness testimony in his case, this claim of ineffective assistance of counsel is vague and conclusory . . . ." (*Id.* at p. 9). The Colorado Court of Appeals further determined that "without a showing of some connection between the proposed expert testimony and the nature of the identification at issue in this case," the failure of counsel to request such expert testimony was not prejudicial. (*Id.* at p. 10).

The Colorado Court of Appeals' decision was consistent with *Strickland. See Cummings v. Sirmons,* 506 F.3d 1211, 1233 (10th Cir. 2007) (holding that a petitioner's ineffective assistance claim failed to satisfy *Strickland's* first prong where the petitioner "never identified precisely what these purported experts would have testified to"); *Snow v. Sirmons,* 474 F.3d 693, 724-25 (10th Cir. 2007) (rejecting an ineffective assistance claim where habeas petitioner failed to indicate "why counsel's failure to object to the evidence was deficient and how such alleged failure prejudiced him"); *Stafford v. Saffle,* 34 F.3d 1557, 1564 (10th Cir. 1994) (vague, speculative, and conclusory allegations will

not satisfy an applicant's burden under *Strickland's* prejudice prong). Mr. Gay has failed to demonstrate an entitlement to relief under § 2254(d)(1).

Further, because Mr. Gay does not point to an unreasonable factual determination by the state appellate court, he is not entitled to relief under § 2254(d)(2).

### 3. claim 9

Mr. Gay contends in claim 9 that trial counsel was ineffective due to a conflict of interest. (Doc. No. 1, at pp. 7-8). Specifically, he alleges that counsel's pending move to another state divided her loyalties. (*Id.*).

Mr. Gay argued in his Rule 35(c) motion that "Defense counsel lied in open court stating she was moving out of state and could not litigate the case however, in fact she did not move out of state, until some 8 months later, after my trial."[15] The trial court rejected the claim because it "fail[ed] to state an adequate factual or legal ground for relief. Colo. R. Crim. P. 35(c)(3)(IV) (2013)."[16]

In *Gay II*, the Colorado Court of Appeals determined that Mr. Gay's articulation of the claim in his post-conviction motion was "bare, conclusory, and failed to allege any prejudice," and, therefore, the claim was properly denied by the trial court. (Doc. No. 13-7, at pp. 6, 8).

The Court finds that the Colorado Court of Appeals' resolution of Mr. Gay's claim comported with *Strickland* because vague and conclusory allegations are

---

15  R., Court File, at p. 783.

16  *Id.* at p. 806.

insufficient to show an entitlement to relief on an ineffective assistance of counsel claim. *See United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994) (conclusory allegations of ineffective assistance, unsupported by an adequate factual basis, cannot sustain an ineffective assistance claim). Further, Mr. Gay fails to demonstrate that the state appellate court's decision was based on an unreasonable factual finding. Mr. Gay is not entitled to relief under 2254(d)(1) or (d)(2).

### C. Claims 3 and 4

In claim three, Mr. Gay asserts that his federal due process rights were violated by the admission of expert testimony from a witness who was not endorsed as an expert. (Doc. No. 1, at p. 5). For his fourth claim, Mr. Gay asserts that he was denied due process when the trial court admitted evidence of a prior burglary he committed because the evidence was not admissible under Colo. R. Evid. 404(b). (*Id.* at p. 6).

Mr. Gay presented both of these claims to the Colorado Court of Appeals as violations of state law, *see* Doc. No. 13-2, at pp. 24-39, although he also made a conclusory argument with regard to claim three that the admission of the evidence violated his right to a fair trial. (*See id.* at p. 30).

In the Order to Dismiss in Part, the Court concluded that claims three and four had not been exhausted in the state courts as federal constitutional claims, but deferred ruling on whether the claims were procedurally barred pending receipt of Respondents' Answer addressing the merits. (Doc. No. 22, at pp. 6-8). Upon further review, the Court declines to resolve the issue of procedural bar because claims three and four fail on the merits. *See Brown v. Sirmons,* 515 F.3d 1072, 1093 (10th Cir. 2008) ("'We can avoid

deciding procedural bar questions where claims can readily be dismissed on the merits.'") (quoting *Snow v. Sirmons*, 474 F.3d 693, 717 (10th Cir. 2007)).

The Supreme Court has reiterated "many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68. In order to prevail on his claims for habeas corpus relief, Mr. Gay must show that the state court's rulings were "so arbitrary or capricious as to constitute an independent due process or [other constitutional] violation." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). *See also Blaurock v. Kansas,* No. 16-3356, 686 F. App'x 597, 611-12 (10th Cir. Apr. 25, 2017) (unpublished) (citing *Lewis*). The federal due process standard was articulated by the Supreme Court in *Lisenba v. California*, 314 U.S. 219 (1941):

> As applied to a criminal trial, denial of due process is the failure to observe
> that fundamental fairness essential to the very concept of justice. In order
> to declare a denial of it we must find that the absence of that fairness
> fatally infected the trial; the acts complained of must be of such quality as
> necessarily prevents a fair trial.

*Id.* at 23. *See also Estelle*, 502 U.S at 75 (holding that "neither the introduction of the challenged evidence, nor the jury instruction as to its use, "'so infused the trial with unfairness as to deny due process of law,'" quoting *Lisenba*, 314 U.S. at 228); *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (habeas petitioner asserting a state law error is entitled to relief only if the error "was so grossly prejudicial that it fatally infected

the trial and denied the fundamental fairness that is the essence of due process.")
(internal quotation marks and citations omitted).

"Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner. . . . " *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly*, 416 U.S. at 643).

In *Gay I,* the Colorado Court of Appeals determined that the witness's testimony describing Mr. Gay's gait was properly admitted under the Colorado Rules of Evidence. (*See* Doc. No. 13-3, at pp. 15-18). This Court must defer to the state appellate court's determination that the evidence was admissible under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 74-76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"). With regard to the prior burglary, the state appellate court determined under a state harmless error standard that Mr. Gay was not prejudiced because there was significant other evidence of his guilt. (*See* Doc. No. 13-3, at pp. 18-20).

In light of the overwhelming evidence of Mr. Gay's guilt (as outlined in detail by the Colorado Court of Appeals in *Gay III*), the Court finds that the admission of the witness's testimony describing his gait and the evidence of a prior burglary did not render Applicant's trial fundamentally unfair in violation of due process. Therefore, claims three and four fail on the merits.

**IV. ORDERS**

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1), filed *pro se* by Byron Kyle Gay is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Mr. Gay has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* is denied for the purpose of appeal. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Gay files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED February 10, 2021.

BY THE COURT:

_____
R. BROOKE JACKSON
United States District Judge